**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COZY EUGENE BUCHANAN, | ) | |
| on behalf of M.I.B. (a Minor), | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 4:25-CV-374 PLC** |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security[1], | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Plaintiff M.I.B.'s application for child's Supplemental Security Income ("SSI"). Plaintiff's father, Cozy Eugene Buchanan ("Buchanan"), brings this action on behalf of his son. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

**I.     Procedural History**

On May 19, 2022, Buchanan applied for child's SSI benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*, on his son's behalf, alleging M.I.B. was disabled as of May 1, 2022 due to post-traumatic stress disorder ("PTSD"), attention-deficit/hyperactivity disorder ("ADHD") and major depressive disorder ("MDD").  (Tr. 58, 152-158)  The Social Security Administration ("SSA") denied M.I.B.'s claim initially in July 2022, and upon reconsideration in March 2023.  (Tr. 58-64, 65-72)  M.I.B. filed a timely request for a hearing before an administrative law judge ("ALJ").  (Tr. 95)  The SSA granted M.I.B.'s request for review

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025.  Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted as the proper party defendant in this action.

1

and conducted a hearing in October 2023.  (Tr. 36-57)  M.I.B. and Buchanan appeared and testified at the hearing.

In a decision dated December 13, 2023, the ALJ determined that Plaintiff "has not been disabled, as defined in the Social Security Act, since May 19, 2022, the date the application was filed[.]"  (Tr. 28)  M.I.B. subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review.  (Tr. 1-6)  M.I.B. has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.    Evidence before the ALJ

### A.  Testimony of Claimant and His Father

At the hearing before the ALJ, M.I.B. testified that he was ten years old and in fourth grade. (Tr. 46-47)  M.I.B. testified that school was going well so far that year[2], and that he "only got into a little bit of trouble…[for] doing something [he] didn't have no business doing."  (Tr. 47)  M.I.B. testified that he had friends at school[3], and was required to perform chores at home.  (Tr. 47-48)

M.I.B.'s father, Buchanan, testified that M.I.B. got into trouble at school recently.  (Tr. 49) Buchanan elaborated as follows:

---

[2] The Court notes that the hearing before the ALJ took place on October 5, 2023, only weeks into the school year.

[3] Buchanan confirmed that his son had friends at school.  (Tr. 50)  Buchanan noted that several of the friends were not good influences on M.I.B., however, because

> [M.I.B.] is basically like a follower, you know.  And [M.I.B.] is not a real tough person.  He's easy to be bullied.  He's easy to be misled, you know.  So when someone tell him to do something, he going to go do it, you know.  Not worried about the consequences….[L]ast year I had to go to that school, I don't know, many—over—probably, like, 50 times, you know, because of what [M.I.B.] was doing, you know, following kids, you know, listening to what kids tell him to do, beating up on other little kids, you know what I'm saying, because he's scared of the other little kid that was making him do it.

(Tr. 50-51)

> Well for one thing he's easy, you know, with his hyper[activity]. He can't stay in his seat. He constantly make noises and this time it was like sexual noises to another student where him and another student was making all the ooh, ah, oh, all that stuff in classroom real loud and got in trouble.

(Tr. 49-50) Buchanan testified that M.I.B. had gotten into trouble a lot during the last school year, for behaviors such as spitting on other students, fighting other students, and not minding the teacher. (Tr. 50) Buchanan said M.I.B. was suspended "about four times" during the previous school year. (*Id.*)

Buchanan testified that M.I.B. took medication for the noises that he makes, and for his ADHD. (Tr. 51-52) He testified that while M.I.B. was able to take care of himself, he still struggled with wetting the bed at night. (Tr. 52-53)

### B. Function Report

In a function report for children ages 6 to 12 years old, dated June 11, 2022, Buchanan stated that M.I.B. was unable to finish things that he started, work on arts and crafts projects, and complete his homework and chores. (Tr. 179) Buchanan explained as follows: "[M.I.B.] is very easy to be distracted. He have been diagnosed with ADHD and depression. He also been mentally and physically abused sexually abused. He is on three different types of medication to help him try to function." (*Id.*) With respect to M.I.B.'s ability to help himself and cooperate with others in taking care of his personal needs, Buchanan stated that M.I.B. "still wets the bed and other people talks about him, and makes him very angry. Then he start talking suicide, about harm himself and other." (Tr. 180) Buchanan stated M.I.B. did not get along with schoolteachers or play team sports, and "is a very slow learner and gets very agitated when he can't!" (Tr. 181, 183) Buchanan noted that M.I.B.'s physical abilities were not limited. (Tr. 182)

### C. School Evidence

On January 10, 2023, M.I.B.'s third grade teacher, Ms. Felicia Lee, completed a Teacher Questionnaire regarding M.I.B. (Tr. 200-209) Ms. Lee stated that she had known M.I.B. for almost six months, and saw him daily for classes in English, Language Arts, Math, Science and Social Studies. (Tr. 201) Ms. Lee noted that although M.I.B. had excellent attendance, his reading, math and written language skills were all at a kindergarten level. (*Id.*)

Ms. Lee opined on whether M.I.B. had problems functioning in six domains. With respect to acquiring and using information, she noted M.I.B. experienced very serious problems with understanding school and content vocabulary; reading and comprehending written material; comprehending and doing math problems; expressing ideas in written form; learning new material; recalling and applying previously learned material; and applying problem-solving skills in class discussion. (Tr. 202) In the area of attending and completing tasks, she noted very serious daily problems with paying attention when spoken to directly; focusing long enough to finish assigned activity or task; refocusing to task when necessary; carrying out multi-step instructions; waiting to take turns; changing from one activity to another without being disruptive; organizing own things or school materials; completing class/homework assignments; completing work accurately without careless mistakes; and working at reasonable pace/finishing on time. (Tr. 203) In the area of interacting and relating with others, she noted very serious daily problems with seeking attention appropriately; expressing anger appropriately; interpreting meaning of facial expression, body language, hints, sarcasm; and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (Tr. 204) Ms. Lee further noted serious daily problems with asking permission appropriately and following rules. (*Id.*) With respect to caring for himself, Ms. Lee noted very serious daily problems with handling frustration appropriately; identifying and appropriately asserting emotional needs; responding appropriately to changes in own mood (e.g.,

4

calming self); using appropriate coping skills to meet daily demands of school environment; and knowing when to ask for help.  (Tr. 206)  Ms. Lee did not note limitations in M.I.B.'s ability to move about and manipulate objects, or problems with his health and physical well-being.  (Tr. 205, 207)

On September 28, 2023, Plaintiff's attorney submitted to the ALJ records dating back several years from Benjamin Banneker Elementary School.  (Tr. 247-264)  The records indicated M.I.B. received short-terms suspensions in September 2022 (for inappropriate touching); in October 2022 (for spitting on another student); in January 2023 (for poking another student with a sewing needle during art class); and in April 2023 (for bringing a vape pen to school).  (Tr. 254-257)   The records showed administrative conferences were held with M.I.B. and his guardian/parent in October 2022 (for possessing a tobacco product); and in November 2022 (for having pornography on his school-issued computer).  (Tr. 254-255)  Finally, the records indicated M.I.B. was ordered to attend individual or group counseling with the school counselor in December 2022 (for having his pants down and underwear visible for the class to see); and in January 2023 (for harassing and hitting another student in the boys' restroom).  (Tr. 254-255)

### D. Medical Records Submitted to the ALJ[4]

The ALJ considered the following medical records:  M.I.B. presented to Dakei Washington ("Washington"), L.M.S.W. at Wyandot Behavioral Health Network on April 21, 2022, for individual psychotherapy.  (Tr. 398-403)  Washington described M.I.B.'s condition as follows: "Emotional/behavioral symptoms are interfering in [M.I.B.'s] life and are identified as being in need of change."  (Tr. 299)  Washington stated the treatment goal was for M.I.B. to "gain control over emotional/behavioral symptoms such as sexual acting out behaviors and temper tantrums so

---

[4] The Court cites to only those records relevant to its decision.

5

that they no longer are a significant interference in achieving goals." (Tr. 400)  This treatment goal was repeated throughout M.I.B.'s sessions with Washington and other healthcare professionals.  (*See, e.g.*, Tr. 355, 439, 449-450, 455-456, 468, 776-777)

On April 29, 2022, M.I.B. told his school counselor:  "I want to kill myself and I am going to do it with a gun or a really big knife.  I am going to do it when I go home." (Tr. 397)  M.I.B. was admitted to KVC Children's Psychiatric Hospital for inpatient emergency mental health treatment, including suicidality, from April 29, 2022 to May 4, 2022.  (Tr. 344-349)  Providers diagnosed M.I.B. with MDD, PTSD, and ADHD.  (Tr. 348-349)  M.I.B. was again treated during an inpatient stay at KVC Children's Psychiatric Hospital from May 11, 2022 to May 19, 2022, for recurring mental health crises and suicidal thoughts.  (Tr. 350-352)

### E.    State Agency Consultants

Bruce Lipetz, Psy.D., is a State agency consultant with a specialty in psychology.  (Tr. 63) Dr. Lipetz reviewed M.I.B.'s file in July 2022, and found that M.I.B. had the medically determinable impairments of depressive, bipolar and related disorders, primary, severe; trauma- and stressor-related disorders, secondary, severe; and attention deficit/hyperactivity disorder, other, severe.  (Tr. 60)  Dr. Lipetz considered the domains applicable to a childhood disability evaluation, and found that M.I.B. had no limitations in moving about and manipulating objects, or health and physical well-being.  (Tr. 61)  He found M.I.B. had marked limitations in caring for himself.  (*Id.*)  Dr. Lipetz found M.I.B.'s limitations were less than marked in acquiring and using information, attending and completing tasks, and interacting and relating with others.  (Tr. 60-61) As relevant here, Dr. Lipetz stated as follows with respect to M.I.B.'s ability to interact and relate to others:

> The claimant's father says he has friends, can make new friends and he gets
> along with the family but not teachers.  At the psychiatrist, he described

being bullied and becoming angry at a teacher when asked about why he was cursing and he was only able to direct anger at the teacher and didn't ask for help.  He had problems with behavior at times in school by the parent and child's report.  He was more interested in adult interaction than in interaction with peers.  His interactions with peers were described as typical and not unusual.

(Tr. 61)  Dr. Lipetz concluded as follows:

> The claimant [has] a severe limitation in self regulation and behavior when triggered due to PTSD but he's recently started tx and the school didn't provide an IEP suggesting his functioning there is not greatly abnormal as his limitations can be accommodated without special services by their response in saying he's on no IEP.  The findings are consistent with the allegation of severe symptoms of self regulation problems secondary to physical and sexual abuse.

(Tr. 62)  Based on the foregoing, Dr. Lipetz determined that M.I.B. was not disabled.  (*Id.*)  On reconsideration, Dr. Leelavathy Reddy provided nearly identical conclusions on March 11, 2023. (Tr. 66-72)

### F.  The ALJ's Decision

The ALJ found that M.I.B. had not engaged in substantial gainful activity since May 19, 2022, the application date; had the severe impairments of disruptive mood dysregulation disorder, depression, ADHD, and PTSD; and did not have an impairment or combination of impairments that meets or medically exceeds the severity of a listed impairment.  (Tr. 19-22)

The ALJ further found that M.I.B. did not have an impairment or combination of impairments that functionally equals the severity of the listings.  (Tr. 22)  Specifically, with respect to the six functional domains (*see* 20 C.F.R. § 416.926a(b)(1)), the ALJ found as follows:

1. Acquiring and using information—less than marked limitation;
2. Attending and completing tasks—less than marked limitation;
3. Interacting and relating with others—less than marked limitation;
4. Moving about and manipulating objects—no limitation;
5. Caring for oneself—marked limitation; and
6. Health and physical well-being—no limitation.

(Tr. 22-28)  The ALJ concluded that M.I.B. was not entitled to benefits.  (Tr. 28)

### III.      Discussion

M.I.B. appeals the ALJ's finding in the domain of interacting and relating with others. M.I.B. essentially argues that the ALJ's finding that M.I.B. did not have a "marked" limitation in this domain was not supported by substantial evidence.  M.I.B. asks for reversal of the decision and remand for a new hearing.

### A.      Standard of Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'"  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome."  *Id*. (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'"  *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'"  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

### B.  Standard for Determining Child Disability

Under 42 U.S.C. § 1382c(a)(3)(C)(i), a child is "disabled for the purposes of [SSI] if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  In making this determination, the ALJ applies a sequential, multi-step test, asking:

1.    Is the child engaged in substantial gainful activity?
2.    If not, does the child have an impairment or combination of impairments that is severe?
3.    If so, do those impairments meet or "medically equal" an impairment listed in the regulations?
4.    If not, do the impairments "functionally equal" an impairment listed in the regulations?

*See* 20 C.F.R. § 416.924(a); 20 C.F.R. pt. 404, subpt. P, app. 1 pt. B; *Walker v. Apfel*, 141 F.3d 852, 854 (8th Cir. 1998).

At the "functional equivalence" step, the ALJ considers how the child's impairment (or combination of impairments) has affected his or her abilities within six broad domains of functioning.  Together, these domains are "intended to capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  The six domains are:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and
6. Health and physical well–being.

*Id.*

A child's impairments will be found to "functionally equal" the impairments listed in the regulations if they cause the child to have "marked" limitations in at least two of the domains, or an "extreme" limitation in at least one domain.  20 C.F.R. § 416.926a(d).  A child has a "marked"

9

limitation in one of these domains when his "impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i); *see also Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 651 (8th Cir. 2004). A child has an "extreme" limitation when his "impairment(s) interferes very seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). There may be "marked" or "extreme" limitations in only one activity or in several activities as a result of the interactive and cumulative effects of the child's impairments. 20 C.F.R. § 416.926a(e)(2)-(3).

To determine whether the child is experiencing "marked" or "extreme" limitations in the domains, the ALJ must review all the evidence in the record and compare the child's functioning to "the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1). *See also* 20 C.F.R. § 416.924a(b)(5)(ii); 20 C.F.R. § 4316.926a(b). The ALJ considers how well the child can initiate and sustain activities, how much extra help the child needs, the effects of structured or supportive settings, how the child functions in school, and the effects of the child's medications, if any. 20 C.F.R. § 416.926a(a)(1)-(3). Finally, in determining a child's disability, the Commissioner must consider all relevant evidence, which may include medical evidence, and information from people who know the child—such as parents and teachers—and can provide evidence about his functioning. 20 C.F.R. § 416.924a(a).

## C. ALJ's Findings

As noted above, although the ALJ found that M.I.B. had not engaged in substantial gainful activity and had severe impairments, he concluded that M.I.B. had not been disabled within the meaning of the Social Security Act since May 19, 2022, the date the application was filed. (Tr. 28) The ALJ based this decision on his finding that M.I.B.'s impairments did not meet, medically equal, or functionally equal the impairments listed in the regulations. (Tr. 20-28) In determining

whether M.I.B.'s impairments functionally equaled the listings, the ALJ determined that M.I.B. had no limitations in two domains (moving about and manipulating objects, and health and physical well-being); less than marked limitations in three domains (acquiring and using information, attending and completing tasks, and interacting and relating with others); and marked limitation in one domain (caring for oneself). (*Id.*)

M.I.B. appeals only the ALJ's finding in the domain of interacting and relating with others. M.I.B. essentially argues that the ALJ's finding that M.I.B. did not have "marked" limitations in that domain was not supported by substantial evidence.[5]  The Court agrees.

### D.    Interacting and Relating with Others

In the domain of interacting and relating with others, the Commissioner considers how well a child initiates and sustains emotional connections with others, develops and uses the language of the child's community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  20 C.F.R. § 416.926a(i).  The Court holds the ALJ's finding that M.I.B.'s abilities in this area are less than markedly limited was not supported by substantial evidence.

### 1.  The ALJ's Analysis of the Teacher's Opinion

As noted above, on January 10, 2023 M.I.B.'s third grade teacher, Ms. Lee, completed a Teacher Questionnaire regarding M.I.B.  (Tr. 200-209)  Ms. Lee stated that she had known M.I.B. for almost six months, and saw him daily for classes in English, Language Arts, Math, Science and Social Studies.  (Tr. 201)

---

[5] As noted above, the ALJ found that M.I.B. suffered from a marked limitation in the area of caring for oneself.  A finding that M.I.B. suffered from a marked limitation in interacting and relating with others would therefore be significant, as a child claimant can be found to "functionally equal the listings" by virtue of findings of marked limitations in two domains of functioning.  20 C.F.R. § 416.926a(a).

Ms. Lee opined on whether M.I.B. had problems functioning in six domains.  As relevant here, with respect to interacting and relating with others Ms. Lee noted very serious daily problems with seeking attention appropriately; expressing anger appropriately; interpreting meaning of facial expression, body language, hints, sarcasm; and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.  (Tr. 204)  Ms. Lee further noted serious daily problems with asking permission appropriately and following rules.  (*Id.*)

The ALJ considered Ms. Lee's opinion, and found it "partially persuasive".  (Tr. 27)  He elaborated as follows:

> While [Ms. Lee] observed the claimant and the medical record supports severe psychiatric impairments that limit, the teacher is not an acceptable medical source and her opinion that the claimant has serious problems in…interacting and relating with others [is] not supported by the medical record or the father's testimony that the claimant….was engaging in typical behavior and social relationships for a child his age.  Additionally, the opinion is not supported by observations or examples, and is not consistent with the overall record and the opinions of medical experts set forth above.

(*Id.*)  M.I.B. argues that the ALJ's reasons for giving Ms. Lee's opinion less significant weight were insufficient.  The Court agrees, for several reasons.

First, the fact that Ms. Lee is not a medical source does not mean her opinion is entitled to no weight.  In determining disability for children, the Commissioner must consider all relevant information in the record, including information from non-medical sources such as parents and teachers.  20 C.F.R. § 416.924a(a) provides in relevant part as follows:  "If you go to school, we will ask for information from your teachers and other school personnel about how you are functioning there on a day-to-day basis compared to other children your age who do not have impairments."  20 C.F.R. § 416.924a(a)(2)(iii).  Furthermore, Social Security Ruling ("SSR") 06–3p provides that information from schoolteachers "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the

individual's ability to function." *See* 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006). *See also Id.* at *3 (noting teachers are "valuable sources of evidence for assessing impairment severity and functioning", as they often "have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time."). This is especially true here, because in her role as an elementary school teacher Ms. Lee was able to observe M.I.B. extensively on a daily basis. As such, Ms. Lee's opinion may not be discounted on the basis that she is not an acceptable medical source.

The ALJ also discounted Ms. Lee's opinion that M.I.B. experienced serious limitations in interacting and relating with others because it was not supported by the medical records, or Buchanan's testimony that M.I.B. "was engaging in typical behavior and social relationships for a child his age." (Tr. 27) As noted above, however, M.I.B.'s records indicate that medical personnel consistently noted the treatment goal was for M.I.B. to "gain control over emotional/behavioral symptoms such as sexual acting out behaviors and temper tantrums so that they no longer are a significant interference in achieving goals." (*See, e.g.*, Tr. 355, 400, 439, 449-450, 455-456, 468, 776-777) Furthermore, with respect to M.I.B.'s father, the Court finds the ALJ partially misrepresented Buchanan's testimony and observations. In other words, while Buchanan did confirm M.I.B.'s assertion that he had friends at school, he qualified the statement by noting that several of the friends were not good influences on M.I.B. (Tr. 50-51) Buchanan further testified that M.I.B. had frequently gotten into trouble during the previous school year, for behaviors including spitting on students, fighting other students, and not minding the teacher, and recently got in trouble for making sexual noises towards another student. (Tr. 49-50) Finally, Buchanan noted in a function report that M.I.B. did not get along with schoolteachers or engage in team sports. (Tr. 181) The Court thus finds that, contrary to the ALJ's conclusion, both the medical

records and Buchanan's testimony support Ms. Lee's observations regarding M.I.B.'s ability to interact and relate to others.

Finally, the ALJ found Ms. Lee's assessment less than persuasive because she did not provide supporting observations or examples.  (Tr. 27)  Ms. Lee was M.I.B.'s teacher during the 2022-2023 school year, however, and therefore had ample opportunity to examine his behavior and form opinions about limitations prior to completing the detailed questionnaire.  Additionally, the Court notes that Plaintiff's attorney submitted to the ALJ records from Benjamin Banneker Elementary School that indicate M.I.B. received short-terms suspensions in September 2022 (for inappropriate touching); in October 2022 (for spitting on another student); in January 2023 (for poking another student with a sewing needle during art class); and in April 2023 (for bringing a vape pen to school).  (Tr. 254-257)  The records further indicate M.I.B. was ordered to attend individual or group counseling with the school counselor in December 2022 (for having his pants down and underwear visible for the class to see); and in January 2023 (for harassing and hitting another student in the boys' restroom).[6]

Upon consideration of the foregoing, the Court finds the ALJ's decision to discount Ms. Lee's opinions is not supported by substantial evidence on the whole record.

### 2. The Third Domain Finding

As noted above, the ALJ concluded that M.I.B. had less than marked limitation in the third domain, interacting and relating with others.  (Tr. 23)  The ALJ elaborated as follows:

> The final domain that the claimant was found to have less than marked limitations involves interacting and relating with others.  This domain includes but is not limited to playing cooperatively with other children, making and keeping friends, seeking attention appropriately, expressing

---

[6] The Court notes the ALJ could have assuaged his concern regarding the alleged paucity of observations or examples by requesting further information from Ms. Lee, and/or seeking commentary  from M.I.B.'s current teacher.

anger appropriately, following rules, and taking turns in conversation. The function report prepared by the claimant's father indicates that the claimant can make new friends and he gets along with the family but not teachers. Dr. Lipetz noted psychiatry records wherein the claimant described being bullied at school and becoming angry at a teacher when he was asked why he was cursing. The claimant's father testified that the claimant's behavior problems at school had improved this year. Records also indicate that the claimant was more interested in adult interaction rather than in interaction with peers; however, his interactions with peers were described as typical and not unusual (Ex. 1A). Treating records cited by Dr. Reddy showed that the claimant was less impulsive and calmer (Ex. 4A).

The teacher questionnaire indicated that the claimant's social interaction ranged in severity from no problem to a very serious problem. However, she did not elaborate or provide examples of the claimant's behaviors (Ex. 9E).

I note that like the other areas of functioning, there is no IEP addressing any functional deficits in social interaction. Overall, the evidence is consistent with less than marked limitations in this area as the claimant is for example, able to make and keep friends, respects and obeys adults, relates experiences and tells stories, and takes turns in conversations.

(Tr. 26-27) M.I.B. argues the ALJ's conclusion is unsupported by substantial evidence on the whole record, and again, the Court agrees.

The Court explained the deficiencies in the ALJ's analysis of Ms. Lee's opinions in the previous section, and will not repeat the discussion here. In short, Ms. Lee's opinions were consistent with both the medical records and Buchanan's testimony. Furthermore, while the ALJ faulted Ms. Lee's assessment for failing to provide specific observations or examples, he neither mentioned the provided educational records that included same, nor reached out to Ms. Lee or M.I.B.'s current teacher for elucidation.

Finally, the ALJ apparently placed great stock in the fact that M.I.B. did not have an individualized education program (IEP) addressing any functional deficits in social interaction. The Court does not find this absence constitutes substantial evidence, however, when viewed in

15

conjunction with Ms. Lee's very adverse assessment and M.I.B.'s troubled history of suspensions and discipline.

In view of the foregoing, the Court holds the ALJ's conclusion that M.I.B. has less than marked limitations in the third domain is unsupported by substantial evidence on the whole record.

**E. Remand**

M.I.B. asks for remand for further proceedings. The Court concludes that remand is necessary for further development of the record, consistent with the above discussion.

**IV. Conclusion**

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of March, 2026.